**In re David R. MILLSAP, Debtor.**

**Bankruptcy No. 89–03328.**

United States Bankruptcy Court,
D. Idaho.

Jan. 18, 1991.

Robert E. Covington, III, Coeur d'Alene, Idaho, for debtor.

Thomas M. Vasseur, Coeur d'Alene, Idaho, for James Topliff.

Edward W. Kok, Coeur d'Alene, Idaho, for First Interstate Bank of Washington.

Frank J. Gebhardt and Stephen D. Phillabaum, Spokane, Wash., for Shirley Tuttle and Ralph and Evelyn Smith.

L.C. Spurgeon, Coeur d'Alene, Idaho, Chapter 13 trustee.

## MEMORANDUM OF DECISION

JIM D. PAPPAS, Bankruptcy Judge.

This matter involves a dispute between the Debtor Millsap and the creditors Smith over their relative rights in, and the value of, certain real property owned by Debtor. After an evidentiary hearing, the Court took under advisement Debtor's motion for determination of the amount of Smiths' allowed secured claim and for valuation of the real property. 11 U.S.C. § 506(a). This Memorandum constitutes the Court's findings of fact and conclusions of law. B.R. 7052.

## BACKGROUND

In about 1970, Debtor and his then wife (now known as Shirley Tuttle), purchased an unimproved lot on the Pend Oreille River near Sagle, Idaho. Several years later, Mr. and Mrs. Millsap built a small cabin on the lot, together with other minor improvements to the property. The Millsap family used the cabin for recreational purposes. In 1979, a few years after construction of the cabin, the Millsaps purchased the adjoining lot. This additional land was unimproved when purchased, and no substantial additions or improvements have been made to it since its acquisition, with the exception of a driveway used to access the cabin lot. The properties have always been used as one parcel by the Millsap family.

In late 1987, Debtor and his wife separated, and in 1988 they were divorced. Mrs. Tuttle was awarded the parties' home in the divorce, and Debtor was granted separate ownership of the Sagle property. The Sagle property is, however, subject to a deed of trust on both lots in favor of Mrs. Tuttle to secure a balance due on a cash award from the divorce action. Since his separation from his ex-wife, the evidence shows that Debtor has physically stayed at the Sagle property only periodically. He

has instead spent most of his time at an apartment in Spokane to be closer to one of his places of business.

The Millsaps had borrowed the money to purchase the additional Sagle lot from Mrs. Tuttle's parents, the Smiths. After the divorce, Smiths sued Debtor and obtained a judgment from a Washington state court for the balance due on the debt. In June of 1989, Smiths filed the Washington judgment with the Bonner County Clerk under the Idaho Uniform Enforcement of Foreign Judgments Act, Idaho Code §§ 10–1301 to 10–1308. Thereafter, on July 5, 1989, the judgment was recorded in Bonner County giving Smiths a lien on Debtor's interest in the Sagle lots. Idaho Code § 10–1306A and § 10–1110.[1]

On July 5, just a few hours after recordation of Smiths' judgment, Debtor filed for record a written declaration of homestead describing and claiming as exempt both Sagle lots. On November 13, 1989, Millsap filed the present bankruptcy proceeding under Chapter 13. In his original bankruptcy schedules Debtor lists his address as "Gypsy Bay Road, Sagle, Bonner County, Idaho", and he claims as a homestead exemption the property by describing it in the same fashion.[2] No objections to Debtor's claims of exemption were made by any interested party.

The parties disagree as to the value of the Sagle lots. However, Debtor asserts that because of the trust deed balance to his ex-wife, together with his homestead exemption, there is no equity in the real estate to which the Smith judgment lien may attach. Consequently, Smiths may be treated under Section 506(a) and (d) as unsecured creditors in any plan he proposes.[3]

Smiths raise several issues. First, as mentioned, they contend the value of the property is in excess of that proposed by Debtor. Second they also argue that Debtor has no valid right to a homestead exemption on either lot of the property. Even if such exemption is properly claimed, they further insist that their judgment lien has priority over it. Smiths therefore claim to be fully secured creditors for purposes of this bankruptcy case.

## VALIDITY AND PRIORITY OF THE HOMESTEAD

■ Idaho has "opted-out" of the federal bankruptcy exemptions, and its citizens are limited to the exemptions allowed under state law. 11 U.S.C. § 522(b); Idaho Code § 11–609. Idaho's homestead exemption statutes are to be liberally construed in favor of the debtor. *In re Bundy*, 85 I.B.C.R. 55, 56, *citing Coughanour v. Hoffman*, 2 Idaho 290, 13 Pac. 231 (1887); *see also In re Stump*, 284 Fed. 199 (9th Cir. 1922), *rev'd on other grounds, White v. Stump*, 266 U.S. 310, 45 S.Ct. 103, 69 L.Ed. 301 (1924). Idaho's homestead exemption statutes were substantially modified by the Legislature recently. *See* 1989 Idaho Session Laws, ch. 371, § 2. For the reasons discussed below, the Court finds that Debtor is entitled to a $30,000 homestead exemption as to the combined value of both Sagle lots.

■ First of all, the Court finds that Smiths' attack on the validity of the homestead exemption claim is not timely. Under Bankruptcy Rule 4003(a), a debtor must list the property claimed as exempt in

---

**1.** The Washington judgment had been previously recorded by the Clerk on June 20, 1989, the day after the judgment was received by the Clerk of the District Court in Bonner County. Upon learning of this, and because Idaho Code § 10–1303(c) does not allow such recording for a period of five days after filing of the judgment and notice to the judgment-debtor, counsel for the creditor requested that the judgment be rerecorded on July 5. It would appear from the statutes that this latter date is when the judgment lien would be deemed effective. *See* Idaho Code § 10–1306A.

**2.** While Debtor subsequently amended his Chapter 13 statement containing the homestead exemption claim, his amended schedule made no change to the homestead exemption claim.

**3.** Debtor has filed a plan proposing such treatment. However, he has informed the Court of the need to make certain modifications thereto. Because of the dispute with Smiths, and the need for amendments to the plan, confirmation issues are being held in abeyance pending this decision.

his bankruptcy schedules filed with the Court. Bankruptcy Rule 4003(b) requires a trustee or creditor to file objections to the exemption claims within 30 days after the conclusion of the Section 341(a) creditors meeting, or the filing of any amendment to the list. Where no objection is filed, or extension of time to object granted by the Court, the exemptions claimed by a Debtor are final. *See In re Pauline,* 119 B.R. 727 (9th Cir.BAP1990) (debtor's homestead exemption becomes final with respect to any action which creditor might have taken against debtor's home); *see also In re Montgomery,* 80 B.R. 385 (Bankr.W.D.Tex. 1987) (debtor's entitlement to exemption becomes invulnerable to later attack absent timely objection); *In re Mitchell,* 80 B.R. 372 (Bankr.W.D.Tex.1987). Collier concurs in this position. 8 L. King, Collier on Bankruptcy, ¶ 4003.04[1], [3] (15th ed. 1990).

■ Here, the exempt property was adequately described in Debtor's original Chapter 13 Statement so as to put the Smiths and others on notice that Debtor claimed his homestead exemption as to the Sagle lots. Though this schedule was later amended, the amendment did not affect the homestead exemption claim. In addition, if there had been any confusion as to the exemption claim it could have been addressed at the meeting of creditors. Since Smiths filed no objection to the exemption claim as required by the rules, the Court will not allow what essentially is a collateral attack on the validity of the exemption in this proceeding.

■ Alternatively, even were the Court to find Smiths' objections to the validity of the exemption timely, they have failed to carry their burden of proof that the exemption is not proper. *See* B.R. 4003(c). While the evidence is somewhat conflicting, the Court finds as a matter of fact that Debtor is entitled to the homestead exemption under Idaho law.

The Idaho homestead statute, as amended in 1989, provides that a homestead includes *"the dwelling house ... in which*

the owner *resides or intends to reside,* with appurtenant buildings, *and the land on which the same are situated and by which the same are surrounded...."* Idaho Code § 55–1001(2) (emphasis supplied).[4] Idaho Code § 55–1003 provides:

A homestead may consist of lands, as described in section 55–1001, Idaho Code, *regardless of area,* but the homestead exemption amount shall not exceed the lesser of (i) the total net value of the lands, mobile home, and improvements as described in section 55–1001, Idaho Code; or (ii) the sum of thirty thousand dollars ($30,000).

(emphasis supplied.)

While it is true that some of the testimony received at the hearing would tend to suggest that Debtor spent the largest share of his time residing elsewhere, there is considerable support for the proposition that Debtor intended the Sagle cabin to be his residence. As Judge Hagan has instructed in a recent decision:

While the debtor and his dependents occasionally lived elsewhere, he did not intend to abandon the residence as his home, and the temporary absences from the residence were occasioned by reasonable causes. The absences were not inconsistent with his right to the specific homestead claimed.

*In re Tiffany,* 89 I.B.C.R. 221, 222, 106 B.R. 213, 214 (Bankr.D.Idaho 1989). Debtor did spend considerable time at the cabin, and entertained his family and friends there. His living arrangements in Spokane can be adequately explained as justified by the convenience of being closer to his work place. The statute does not authorize the Court to question the wisdom of this arrangement, but only to examine Debtor's actual intent. In addition, the Idaho law does not presume that a homestead has been abandoned unless it is continually vacant for at least six months. Idaho Code § 55–1006. Based on the evidence, the Court finds that Debtor has actually resided on the Sagle lots for purposes of claim-

---

**4.** The prior version of the statute defining the homestead did not include the "surrounding land" language underscored above.

ing them as his homestead since 1987, even though he spent considerable periods of time elsewhere.

Likewise, the statutes contain no restriction on the area of the property subject to the homestead. Rather, the law utilizes a value limitation in restricting the extent of the exemption. Since the unimproved lot physically "surrounds" (i.e., is adjacent to) the improved lot, and the two lots have been utilized by its owner as a single parcel, it is of no consequence that the parcel is legally or physically capable of being divided and sold as two tracts.

■ Finally, having qualified for a homestead exemption on both lots, when did the exemption arise in relation to the attachment of the Smiths' judgment lien? Idaho Code § 55–1004(1) provides that qualified property

> constitutes a homestead and is automatically protected by the exemption ... from and after the time the property is occupied as a principal residence by the owner or, if the homestead is unimproved or improved land that is not yet occupied as a homestead, from and after the declaration or declarations required in this section are filed for record....

Interpreting the evidence favorably to Debtor, the Court finds that Debtor occupied the property in the sense contemplated by the statute from and after the separation from his wife in 1987. As an occupant, the homestead exemption automatically came into existence when the new statute became effective on July 1, 1989. 1989 Session Laws ch. 371, § 2. Since Smiths' judgment lien was not legally effective until recorded on July 5, 1989, it is subordinate and subject to Debtor's homestead exemption claim.

### VALUATION

■ The Court heard the testimony of two appraisers as well as that of Debtor and Mrs. Tuttle regarding the value of the property. Each commented on the value of the lots, both separately and as a unit. When determining the value of property subject to a lien for purposes of Section 506(a) of the Bankruptcy Code, the Court must do so "in light of the purpose of the valuation and of the proposed disposition or use of such property...." 11 U.S.C. § 506(a).

Debtor proposes to retain and use the property under his proposed plan. Therefore, the Court will attempt to determine the fair market value of the property on that basis. Since there is no evidence of any need or desire to someday sell the property as separate parcels, the Court finds that it should be valued as a whole and not by individual lot. In addition, there is at least a very real doubt that the unimproved lot would qualify for a septic system under applicable local health district rules. Because of the doubts surrounding the suitability of the lot for residential improvement, it is more appropriate to value the lot as a part of the larger parcel rather than standing alone.

The values testified to by the various witnesses varied, although not greatly. After review of the evidence, the Court is inclined to accept the opinions of value offered by Mr. Gregg. The witness was well qualified, had ample experience, and impressed the Court with his presentation. Accordingly, the Court fixes the market value of the improved parcel at $75,000, with $15,000 additional attributable to the unimproved lot based upon Mr. Gregg's "excess lands" approach, for a total value of $90,000.

### CONCLUSION

Debtor has a valid homestead on both Sagle lots to the extent of $30,000 in equity which has priority over the Smiths' judgment lien. The total value of the lots for purposes of Section 506(a) is $90,000. Since Mrs. Tuttle claims $67,000 to be due on her deed of trust, it would appear that Smiths' judgment claim is unsecured pursuant to Section 506(d) of the Bankruptcy Code. This Memorandum shall constitute the Court's findings of fact and conclusions of law. B.R. 7052. Counsel for Debtor shall submit an order to the Court for

entry in conformity with this decision.[5]

**5.** In their Brief, creditors devote considerable effort to arguments as to why Debtor's plan should not be confirmed. Brief of Creditors, pgs. 10–15. Because of the issues discussed herein concerning the value of the real estate, and other unresolved issues concerning the value of Debtor's corporate stock in the business, the confirmation matters raised by creditors are not considered by the Court and should be taken up later in the case.