In re Guy Taylor CERCHIONE and
Carla Marie Cerchione,
Debtors.

R. Sam Hopkins, Chapter
7 Trustee, Appellant,

v.

Guy Taylor Cerchione; Carla Marie
Cerchione, Appellees.

BAP No. ID–09–1069–DJuMk.
Bankruptcy No. 08–40655–JDP.

United States Bankruptcy
Appellate Panel
for the Ninth Circuit.

Argued by Video Conference and
Submitted on July 30, 2009.

Filed Sept. 8, 2009.

Jim Spinner (Attorney for R. Sam Hopkins, Ch. 7 Trustee) Service, Spinner & Gray, Pocatello, ID, for Appellant(s).

Allen B. Ellis (Attorney for Guy and Carla Cerchione), Boise, ID, for Appellee(s).

Before: DUNN, JURY and MARKELL, Bankruptcy Judges.

## OPINION

RANDALL L. DUNN, Bankruptcy Judge:

Guy and Carla Cerchione (the "Cerchiones") filed a chapter 7[1] bankruptcy case and claimed a homestead exemption in a home under construction. The trustee objected to their homestead exemption claim on the grounds that the Cerchiones had not occupied the home property and had not executed and recorded a declaration of homestead with respect to the home property at any relevant time. The bankruptcy court overruled the trustee's objection to the Cerchiones' claimed homestead exemption. We AFFIRM.

## I. FACTS

The Cerchiones formerly lived in Meridian, Idaho. Mr. Cerchione was employed as a home builder, and when the housing market went into decline, he sought other employment, ultimately accepting a job in Idaho Falls. On October 15, 2007, the Cerchiones closed the sale of their former home in Meridian and moved to Idaho

---

**1.** Unless otherwise indicated, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1532. All "Rule" or "FRBP" references are to the Federal Rules of Bankruptcy Procedure, Rules 1001–9037.

Falls. The net proceeds to the Cerchiones from the sale were $144,629.94.

After several offers to buy existing homes in the Idaho Falls area were not accepted, the Cerchiones decided to build a new home. While their new home (the "Property") was under construction, the Cerchiones lived in the home of Mr. Cerchione's mother.

The Cerchiones bought the lot on which they planned to build their new home on May 23, 2008. At about the same time, the Cerchiones obtained a construction loan ("Loan") from the Bank of Commerce ("Bank"). Under the terms of the Loan, the Cerchiones were required to contribute $100,000 as a down payment for construction of their home on the Property. The balance of the costs of construction, as well as the purchase price for the homesite lot, were to be advanced by the Bank, in an amount totaling approximately $163,500.

The Cerchiones filed their chapter 7 petition on July 31, 2008. In their schedules, they claimed an exemption in the Property of $100,000, the maximum allowed under Idaho Code § 55–1003. The Cerchiones claimed an ownership interest in the Property in their Schedules A and D, and valued it at $280,000, subject to the Bank's secured claim in the amount of $165,000. Their petition, however, stated their address as on Cypress Avenue in Idaho Falls, the home of Mr. Cerchione's mother.

The chapter 7 trustee, R. Sam Hopkins ("Trustee"), objected to the Cerchiones' claimed exemption in the Property on the grounds that they did not reside at the Property and they had not made and recorded a Declaration of Homestead with respect to the Property.

The Cerchiones responded to the Trustee's objection, purporting to amend Schedule C to claim an exemption in the

Property pursuant to Idaho Code §§ 55–1003 and 55–1008. Idaho Code § 55–1008 provides in relevant part:

> The proceeds of the voluntary sale of the homestead in good faith for the purpose of acquiring a new homestead ... up to the amount specified in section 55–1003, Idaho Code, shall likewise be exempt for one (1) year from receipt, and also such new homestead acquired with such proceeds.

The Cerchiones also claimed an exemption in certain appliances to be installed at the Property that had not yet been delivered.[2] The Cerchiones also filed a motion to compel abandonment of the Property by the Trustee.

The Trustee filed a further objection to the Cerchiones' "Amended Claim of Exemptions." Among the grounds for objecting to the Cerchiones' amended exemption claims, the Trustee asserted that, "Debtors do not reside, and did not reside in the [Property], on the date of filing of the bankruptcy or any other relevant period of time, and unless they recorded a Declaration of Homestead as required by Idaho Code § 55–1004, prior to filing for bankruptcy, the exemption should be disallowed." The Trustee also objected to the Cerchiones' motion to compel abandonment.

The bankruptcy court conducted an evidentiary hearing ("Hearing") on the Trustee's objection to the Cerchiones' amended exemption claim on November 4, 2008. At the Hearing, the Cerchiones provided uncontradicted testimony that: 1) they had paid $100,000 of the proceeds from the sale of their Meridian, Idaho residence to the Bank for construction of a new home on the Property in May, 2008, prior to their bankruptcy filing; 2) they intended to re-

---

**2.** The bankruptcy court ultimately disallowed the Cerchiones' claimed exemption in the appliances, and that decision has not been appealed.

side at the Property; and 3) they had obtained a certificate of occupancy for the Property. The Trustee elicited testimony from the Cerchiones that: 1) on the date of their bankruptcy filing and through the date of the Hearing, they never had resided at the Property, and 2) they never had signed and recorded a Declaration of Homestead with respect to the Property. Following the Hearing, the bankruptcy court took the matter under advisement.

After supplemental briefing by the parties, but prior to issuing its decision, the bankruptcy court held a status hearing on the matter on December 2, 2008. The record of proceedings for the status hearing reflects that the Cerchiones' counsel agreed to file an amended Schedule C to conform the Cerchiones' schedules to their amended exemption claim, and the Trustee's filed objection would be deemed an objection to the Cerchiones' homestead exemption claim in their amended Schedule C. The Cerchiones filed their amended Schedule C on December 11, 2008, claiming a homestead exemption in the Property under Idaho Code § 55–1008 in the amount of $95,700.

On January 6, 2009, the bankruptcy court issued its Memorandum of Decision ("Memorandum Decision")[3] and order sustaining the Trustee's objection to the Cerchiones' claim of exemption in appliances, but overruling the Trustee's objection to the Cerchiones' claimed exemption in the Property. The Trustee filed a motion for additional findings and an amended order ("Post–Hearing Motion") and a supporting memorandum, raising the issue whether the Cerchiones' claimed exemption in the Property expired a year after the sale of their Meridian, Idaho residence, when they did not yet occupy the home. The Cerchiones opposed the Post–Hearing Motion,

arguing that the Trustee had not shown any manifest error of law or fact that would justify the relief requested.

The bankruptcy court heard the Post–Hearing Motion on February 11, 2009. At the hearing, counsel for the Cerchiones confirmed that the Cerchiones had moved into the new home on the Property.[4] Following argument, the bankruptcy court declined to make further fact findings and stated its legal conclusions orally, determining that its prior legal conclusions stated in the Memorandum Decision were not clearly erroneous. The bankruptcy court entered its order denying the Post–Hearing Motion on the same date.

The Trustee filed a timely Notice of Appeal on February 20, 2009.

## II. JURISDICTION

The bankruptcy court had jurisdiction under 28 U.S.C. §§ 1334 and 157(b)(2)(B). We have jurisdiction under 28 U.S.C. § 158.

## III. ISSUES

1. Whether the bankruptcy court erred in determining that the Cerchiones could claim an Idaho homestead exemption in the Property when they had not occupied the Property and had not signed and recorded a Declaration of Homestead with respect to the Property "at any relevant time."

2. Whether the bankruptcy court erred in declining to find that even if the Cerchiones were entitled to claim a homestead exemption in the Property when they filed their bankruptcy case, their exemption claim expired one year after the sale of their Meridian, Idaho residence.

---

3. *In re Cerchione,* 398 B.R. 699 (Bankr.D.Idaho 2009).

4. At oral argument on this appeal, the parties confirmed that the Cerchiones continue to reside at the Property.

3. Whether the bankruptcy court erred in not addressing the temporary exemption and reversionary rights issues with respect to the Cerchiones' exemption claim in the Property raised by the Trustee.

## IV. STANDARDS OF REVIEW

■ We review a bankruptcy court's conclusions of law, including its interpretations of provisions of the Bankruptcy Code and state law, de novo. *New Falls Corp. v. Boyajian (In re Boyajian)*, 367 B.R. 138, 141 (9th Cir.BAP2007), *aff'd*, 564 F.3d 1088, 1090 (9th Cir.2009). We review mixed questions of law and fact de novo. *Wechsler v. Macke Int'l Trade, Inc. (In re Macke Int'l Trade, Inc.)*, 370 B.R. 236, 245 (9th Cir.BAP2007). Such issues are reviewed de novo "because they require consideration of legal concepts and the exercise of judgment about the values that animate legal principles." *Murray v. Bammer (In re Bammer)*, 131 F.3d 788, 792 (9th Cir.1997).

■ A bankruptcy court's decision to deny a motion for additional findings, reconsideration or an amended order or judgment is reviewed for abuse of discretion. *Weiner v. Perry, Settles & Lawson, Inc. (In re Weiner)*, 161 F.3d 1216, 1217 (9th Cir.1998); *Hansen v. Moore (In re Hansen)*, 368 B.R. 868, 875 (9th Cir. BAP2007); *Nunez v. Nunez (In re Nunez)*, 196 B.R. 150, 155 (9th Cir.BAP1996). A bankruptcy court necessarily abuses its discretion if it bases its decision on an erroneous view of the law. *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 405, 110 S.Ct. 2447, 110 L.Ed.2d 359 (1990). Under the abuse of discretion standard, we must have a definite and firm conviction that the bankruptcy court committed a clear error of judgment in the conclusion it reached before reversal is appropriate. *AT & T Universal Card Svcs. v. Black (In re Black)*, 222 B.R. 896, 899 (9th Cir. BAP 1998).

■ On appeal, we may affirm the bankruptcy court on any ground supported by the record, even if it differs from the bankruptcy court's stated rationale. *Pollard v. White*, 119 F.3d 1430, 1433 (9th Cir.1997).

## V. DISCUSSION

There is no dispute with respect to the facts relevant to this appeal. On October 15, 2007, the Cerchiones closed the sale of their former home in Meridian, Idaho. In May 2008, they acquired a new homesite lot in Idaho Falls, Idaho and paid $100,000 from the sale proceeds of the Meridian home to the Bank as a down payment for construction of a new home on the Property. The Cerchiones filed their chapter 7 bankruptcy petition on July 31, 2008. At the time the Cerchiones filed for bankruptcy and at the time of the Hearing, the Cerchiones were not residing on the Property, as construction was not completed, and they had not signed and recorded a Declaration of Homestead with respect to the Property. Accordingly, the record is clear that the Cerchiones were not residing on the Property and had not signed and recorded a Declaration of Homestead with respect to the Property within one year following the closing of the sale of their home in Meridian. However, at the time of their bankruptcy filing and at all relevant times thereafter, the Cerchiones clearly intended to reside on the Property, and by the time of the hearing on the Trustee's Post–Hearing Motion, the Cerchiones were residing on the Property and reside there still.

The Trustee argues that the bankruptcy court's orders concerning his objection to the Cerchiones' claimed exemption in the Property should be reversed because the Cerchiones neither resided on the Property nor executed and recorded a Declaration of Homestead with respect to the

Property at any relevant time. We disagree for the following reasons.

A. *The Cerchiones' Exemption Claim Was Proper Under Idaho Code § 55–1008.*

In this appeal, we are required to interpret several provisions of Idaho's homestead exemption statutes. Idaho has "opted out" of the federal exemptions authorized under the Bankruptcy Code; so, its citizens are limited to the exemptions allowed under Idaho state law. *In re Millsap*, 122 B.R. 577, 579 (Bankr.D.Idaho 1991); § 522(b); Idaho Code § 11–609.

### 1. *Guidelines for interpretation*

The Idaho Supreme Court has provided the following guidance to interpreting Idaho laws:

The interpretation of a statute is a question of law over which this Court exercises free review. *State v. Hart*, 135 Idaho 827, 829, 25 P.3d 850, 852 (2001). The object of statutory interpretation is to give effect to legislative intent. *State v. Yzaguirre*, 144 Idaho 471, 475, 163 P.3d 1183, 1187 (2007) (citing *Robison v. Bateman–Hall Inc.*, 139 Idaho 207, 210, 76 P.3d 951, 954 (2003)). The literal words of the statute provide the best guide to legislative intent, and therefore, the interpretation of a statute must begin with the literal words of the statute. *Id.* "In determining the ordinary meaning of a statute 'effect must be given to all the words of the statute if possible, so that none will be void, superfluous, or redundant.'" *State v. Mercer*, 143 Idaho 108, 109, 138 P.3d 308, 309 (2006) (quoting *In re Winton Lumber Co.*, 57 Idaho 131, 136, 63 P.2d 664, 666 (1936)). Moreover, the Court must consider all sections of applicable statutes together to determine the intent of the legislature. *Davaz v. Priest River Glass Co., Inc.*, 125 Idaho 333, 336, 870 P.2d 1292, 1295 (1994).

*AmeriTel Inns, Inc. v. The Pocatello–Chubbuck Auditorium or Cmty. Center Dist.*, 146 Idaho 202, 204, 192 P.3d 1026, 1028 (2008).

Federal standards for statutory interpretation are essentially the same. The starting point for interpreting a statute is review of its specific language. "Where the statute's language is plain, a court will enforce it according to its terms; statutory analysis thus ends, unless there is an ambiguity or where following the literal reading would lead to an absurd result." *Culver, LLC v. Chiu (In re Chiu)*, 266 B.R. 743, 749 (9th Cir.BAP2001) (citing *United States v. Ron Pair Enters., Inc.*, 489 U.S. 235, 240–41, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989)).

The starting point in discerning congressional intent is the existing statutory text, *see Hughes Aircraft Co. v. Jacobson*, 525 U.S. 432, 438, 119 S.Ct. 755, 142 L.Ed.2d 881 (1999), and not the predecessor statutes. It is well established that "when the statute's language is plain, the sole function of the courts—at least where the disposition required by the text is not absurd—is to enforce it according to its terms."

*Lamie v. United States Trustee*, 540 U.S. 526, 534, 124 S.Ct. 1023, 157 L.Ed.2d 1024 (2004) (citations omitted).

Idaho's homestead exemption statutes are liberally construed in favor of debtors. *In re Millsap*, 122 B.R. at 579 (citations omitted); *In re Kline*, 350 B.R. 497, 502 (Bankr.D.Idaho 2005); *In re Koopal*, 226 B.R. 888, 890 (Bankr.D.Idaho 1998). *See also Sticka v. Casserino (In re Casserino)*, 379 F.3d 1069, 1072 (9th Cir. 2004) ("While Oregon courts have never addressed whether a residential leasehold qualifies as a homestead, they have held that the homestead exemption should be liberally interpreted in light of its goal to 'assure to the unfortunate debtor ... the shelter and influence of home.'") (citation

omitted). That guiding principle recognizes the humane purpose behind enactment of homestead exemption laws.

> Through motives of humanity towards the debtor and his family, exemption and homestead laws have been enacted. Prior to their enactment the law was as cruel as Shylock to the unfortunate debtor, and his wife and children had to suffer.... They assure to the family a home. "They mitigate the harshness of the cruel, grasping creditor, and give to the unfortunate debtor a place of refuge and a gleam of hope."

*Wright v. Westheimer,* 2 Idaho 962, 28 P. 430, 433 (1891).

That said, courts are not free to "torture the language of the state [exemption] statutes in the guise of liberal construction." *In re Kline,* 350 B.R. at 502 (citing *In re Mason,* 254 B.R. 764, 769 (Bankr.D.Idaho 2000)).

### 2. *Analysis of the relevant statutes*

■ A "homestead" is defined in Idaho Code § 55–1001(2) in relevant part as follows:

> "Homestead" means and consists of the dwelling house ... in which the owner resides *or intends to reside,* ... and the land on which the same are situated and by which the same are surrounded, or

improved; *or unimproved land owned with the intention of placing a house ... thereon and residing thereon ....* Property included in the homestead *must be actually intended* or used *as a principal home for the owner.* (emphasis added).

If these conditions are met, the debtor has an automatic homestead exemption, in that the debtor is not required to record a "declaration of homestead" in order to qualify for the exemption. *In re Koopal,* 226 B.R. at 890.

Historically, under Idaho law, the only way to "select" a homestead was to execute, acknowledge, and record a declaration of homestead. *See White v. Stump,* 266 U.S. 310, 311, 45 S.Ct. 103, 69 L.Ed. 301 (1924), which applied Idaho Comp. Stat. 1919 § 5462, subsequently codified at Idaho Code § 55–1203:

> **Mode of selection.**—In order to select a homestead, the husband or other head of a family, or in case the husband has not made such selection, the wife, must execute and acknowledge, in the same manner as a conveyance of real property is acknowledged, a declaration of homestead, and file the same for record.

That requirement was repealed in 1989. S. 1225, Idaho Centennial Leg., 1st Reg. Sess. (1989) ("Senate Bill 1225").[5]

---

**5.** The description of Senate Bill 1225 in its title states that it is "AN ACT ... TO PROVIDE FOR AN AUTOMATIC HOMESTEAD EXEMPTION...." Among the purposes to be served by Senate Bill 1225 in the "Statement of Purpose RS22218C2" included in its legislative history is the following:

> The procedures currently required to record a homestead require that it include a legally sufficient description of the property, that it be acknowledged and notarized, and that it be recorded at the right time. In order to secure protection, the homeowner must be both aware of the act and able to afford legal counsel to properly file. The time limitations of the act make it impossible for a homeowner to file once bank-

ruptcy proceedings have begun. Subsequently, this protection is being denied to Idaho Citizens who lack the knowledge and means to file for protection.

The Minutes of the Idaho Senate Local Government and Taxation Committee for March 6, 1989 reflect that Senate Bill 1225, among other things, "will make recording unnecessary for the homestead exemption." The Minutes of the Idaho House of Representatives Revenue and Taxation Committee for March 22, 1989 state the following from the report of the Chairman regarding Senate Bill 1225:

> [The Chairman] stated that the procedures currently required to record a homestead require that it include a legally sufficient description of the property, that it be ac-

Under Idaho Code § 55–1003, a homestead exemption is limited to no more than $100,000. The Cerchiones originally claimed a homestead exemption under § 55–1003 in the amount of $100,000 in the Property. Ultimately, in their amended Schedule C, the Cerchiones claimed an exemption of $95,700 in the Property under Idaho Code § 55–1008.

Idaho Code § 55–1008(1) deals with proceeds from the sale of a homestead and provides in relevant part as follows:

> HOMESTEAD EXEMPT FROM EXECUTION—WHEN PRESUMED VALID. (1) Except as provided in section 55–1005, Idaho Code,[6] the homestead is exempt from attachment and from execution or forced sale for the debts of the owner up to the amount specified in section 55–1003, Idaho Code. The proceeds of the voluntary sale of the homestead in good faith for the purpose of acquiring a new homestead, ... up to the amount specified in section 55–1003, Idaho Code, shall likewise be exempt for one (1) year from receipt, *and also such new homestead acquired with such proceeds.* (emphasis added).

A debtor's entitlement to claimed exemptions generally is determined as of the date of such debtor's bankruptcy filing. *See In re Chiu,* 266 B.R. at 751 (exemptions are determined as of the date of bankruptcy filing and without reference to subsequent changes in the character of the property claimed exempt); *In re Lane,* 364 B.R. 760, 762–63 (Bankr.D.Or.2007) ("Generally, only facts existing on the filing date are relevant to determining whether a debtor qualifies for her homestead exemp-

tion.") (citing *Harris v. Herman (In re Herman),* 120 B.R. 127, 130 (9th Cir. BAP1990)).

As noted above, on the date of the Cerchiones' bankruptcy filing, they had paid $100,000 from the proceeds from the sale of their Meridian, Idaho residence to the Bank for construction of a new home on the Property in which they intended to reside. By its plain language, Idaho Code § 55–1008 provides two bases for claiming a homestead exemption with respect to the disposition of proceeds from the sale of a former homestead: 1) cash proceeds are exempt up to the $100,000 cap set by Idaho Code § 55–1003 for a period of one year from receipt; 2) an exemption up to the $100,000 cap can be claimed in a new homestead acquired with such proceeds, recalling from the "homestead" definition in Idaho Code § 55–1001(2) that the homestead property "must be actually intended or used as a principal home for the owner." Since the Cerchiones had paid $100,000 from the sale proceeds from their Meridian home to acquire the Property within one year following the closing of the sale at the time of their bankruptcy filing, and they clearly intended to reside on the Property when the home was completed, the bankruptcy court's conclusion that their homestead exemption claim was valid pursuant to the terms of Idaho Code § 55–1008 is consistent with its plain language.

As the party objecting to the Cerchiones' claimed homestead exemption, the Trustee had the burden of proof to establish that the exemption claim was not proper. Rule 4003(c); *Carter v. Anderson*

---

knowledged and notarized, and that it be recorded at the right time. He said in order to secure protection, the homeowner must be both aware of the act and able to afford legal counsel to properly file. This legislation makes the homestead exemption automatic.

**6.** Idaho Code § 55–1005 sets forth exceptions to homestead exemption protections, including, for example, exceptions for mechanic's, laborer's or vendor's liens on the homestead property.

*(In re Carter)*, 182 F.3d 1027, 1029–30 n. 3 (9th Cir.1999). The Trustee initially bore both the burden of producing evidence to support his objection and the burden of persuasion. *Id.* However, once the Trustee produced evidence to rebut the validity of the claimed exemption, the burden of proof shifted to the Cerchiones to produce evidence establishing that their claimed exemption was valid, even though the ultimate burden of persuasion remained with the Trustee. *Id.*

■ The Trustee argues that the bankruptcy court erred in its conclusion because at the time of their bankruptcy filing, the Cerchiones had never actually resided at the Property and further had not signed and recorded a "Declaration of Homestead," citing Idaho Code § 55–1004. Idaho Code § 55–1004(2) provides in relevant part: "An owner who selects a homestead from unimproved or improved land that is not yet occupied as a homestead must execute a declaration of homestead and file the same for record in the office of the recorder of the county in which the land is located."

However, the language of Idaho Code § 55–1008(1) does not require the recording of a Declaration of Homestead for debtors to be entitled to claim a homestead exemption once proceeds from the sale of a former homestead have been invested in a property in which they intend to reside. Since Idaho Code § 55–1008(1) includes specific references to Idaho Code § 55–1005, with its exceptions to homestead exemption protection, and Idaho Code § 55–1003, restricting the amount of a homestead exemption claim to no more than $100,000, the absence of a limiting reference to Idaho Code § 55–1004 is significant.

In fact, interpreting Idaho Code § 55–1008 in this manner avoids a trap for debtor home buyers. Following the Trustee's argument, a debtor's homestead exemption would end upon the expenditure of the proceeds from the sale of a prior home, absent the recording of a declaration of homestead. As the Trustee points out in his reply brief, the process of signing and recording a declaration of homestead is not elaborate or onerous. "[I]t is basically a one or two page document, and a small recording fee to record a declaration of homestead with the Bonneville County Recorder's office." Appellant's Reply Brief, at p. 9. In this appeal, what that would mean is the Cerchiones, who invested $100,000 from the proceeds of the sale of their prior home in their new home, who always intended to reside in the new home, and who in fact now reside in that home, would lose their homestead exemption (and probably the home as a result) for failure to sign and record a two-page piece of paper. A liberal interpretation of Idaho Code § 55–1008, *consistent with its terms,* does not countenance such a result.

■ In addition, while Idaho Code § 55–1004 addresses homestead abandonments and establishing homesteads generally in unimproved or improved land, Idaho Code § 55–1008 deals specifically with reestablishing or maintaining a homestead through the application of proceeds from the sale of a prior homestead. It is a general principle of statutory construction that where there is a potential conflict between general and specific statutory provisions, the specific statutory provisions control over the general. *See Simpson v. United States,* 435 U.S. 6, 15, 98 S.Ct. 909, 55 L.Ed.2d 70 (1978); *Neary v. Padilla (In re Padilla),* 222 F.3d 1184, 1192 (9th Cir.2000) ("Statutory construction canons require that '[w]here both a specific and a general statute address the same subject matter, the specific one takes precedence regardless of the sequence of the enactment, and must be applied first.'") (citations omitted).

In this case, the homestead exemption statute that particularly concerns how proceeds from the sale of a homestead are applied to maintain a homestead exemption claim (Idaho Code § 55–1008(1)) does not contain a requirement that the terms of Idaho Code § 55–1004 be complied with before a valid homestead is established. The absence of any such requirement bolsters our conclusion that the bankruptcy court correctly interpreted Idaho Code § 55–1008 to decide that the Cerchiones had a valid exemption claim with respect to the Property at the time of their bankruptcy filing.

■ In his Post–Hearing Motion, the Trustee argued in effect that even if the Cerchiones were entitled to claim a homestead exemption in the Property on the date of their bankruptcy filing, their exemption claim had expired by the time of the Hearing because they had neither resided at the Property nor filed a Declaration of Homestead with respect to the Property within one year following the closing date of the sale of their Meridian home. While the bankruptcy court questioned whether the Trustee had ever raised any issue as to expiration of the Cerchiones' homestead exemption claim by the time of the Hearing, and the Cerchiones have argued that the Trustee should be judicially estopped from making that argument, the Trustee relies upon the terms of his objection to the Cerchiones' amended exemption claim in which he asserted that the Cerchiones had neither resided at the Property nor filed a Declaration of Homestead *at any relevant time.*

■ Ultimately, we conclude that the procedural questions as to whether the Trustee appropriately raised the issues of expiration of the Cerchiones homestead exemption and a reversionary interest of their bankruptcy estate in the Property do not make a difference. Although Idaho Code § 55–1008(1) provides for a one-year deadline to reinvest cash proceeds from the sale of a homestead, there is no "one-year" limitation that applies once a new homestead has been acquired with such proceeds. The exemption applies absolutely to "such new homestead acquired with such proceeds." The Cerchiones invested $100,000 in the construction of a home on the Property before their bankruptcy filing, well within the year following the sale of their Meridian home. Thereafter they intended to occupy, and ultimately occupied, the Property as their residence. That is all that Idaho Code § 55–1008 by its terms requires to entitle the Cerchiones to claim their homestead exemption.

■ The Trustee further argues that by upholding the Cerchiones' homestead exemption claim in this case, the bankruptcy court in effect approved the creation of a "hidden" exemption. That argument is difficult to credit in bankruptcy, where debtors must schedule their exemption claims under penalty of perjury in Schedule C to take advantage of them. In this case, the Cerchiones scheduled their homestead exemption claim from the outset, giving the Trustee ample opportunity to raise his objection, which he did. If a debtor attempts to use Idaho Code § 55–1008 to claim a homestead exemption in property where the debtor does not intend to reside, the Trustee would have a valid basis for objection under the terms of Idaho Code § 55–1008. However, such is not the case here: The evidence in the record is uncontroverted that the Cerchiones always intended to reside in the home constructed on the Property and, indeed, had begun living at the Property by the time of the hearing on the Trustee's Post–Hearing Motion.

We conclude that the bankruptcy court did not err as a matter of law originally in determining that the Cerchiones were entitled to claim a homestead exemption in the

Property under Idaho Code § 55–1008, and it did not err in denying the Trustee's Post–Hearing Motion because it made no manifest error that would justify revisiting its original determination. The Cerchiones were entitled to claim a homestead exemption in the Property when they filed their bankruptcy petition, and they subsequently have established residence at the Property. That should end the matter.

### B. *Golden and Its Progeny Do Not Change the Result.*

In *England v. Golden (In re Golden)*, 789 F.2d 698 (9th Cir.1986), applying California law, the Ninth Circuit affirmed the decision of the bankruptcy court that if a debtor held exempt proceeds from the sale of a homestead property on his bankruptcy filing date, the proceeds lost their exempt status if they were not invested in a new homestead by the deadline set in the applicable state exemption statute. *See Ford v. Konnoff (In re Konnoff)*, 356 B.R. 201 (9th Cir.BAP2006); *Gaughan v. Smith (In re Smith)*, 342 B.R. 801 (9th Cir.BAP2006) (both applying Arizona law). In *Golden*, the Ninth Circuit applied the general principles that states are authorized under § 522(b)(2)(A) to "opt out" of the federal exemption scheme, and applicable state exemptions may be more or less generous than their federal counterparts. *In re Golden*, 789 F.2d at 700.

We interpret the rationale for the *Golden* decision as follows: Since the purpose of the homestead exemption in this context is to allow a debtor to substitute one home for another without a forced sale, and it is not intended to keep home sale proceeds beyond the reach of creditors indefinitely, states can make the decision appropriately to place a time limit on the investment of sale proceeds in a new homestead. "California law requires reinvestment in order to prevent the debtor from squandering the [homestead sale] proceeds for nonexempt purposes." *Id.*

The Trustee relies on *Golden, Konnoff*, and *Smith* as support for his argument that the Cerchiones' exemption in the Property expired one year following the sale of their Meridian home because they were not yet living on the Property, and they had not signed and recorded a Declaration of Homestead with respect to the Property by that deadline. However, we conclude that the *Golden* line of authority simply is not applicable here because on the date of their bankruptcy filing, the Cerchiones already had invested the exempt proceeds from the sale of their Meridan home with the Bank to pay for the purchase of their homesite lot and to fund construction of their new home. They had no sale proceeds left to "squander" for nonexempt purposes. The one-year limitation for reinvestment of homestead sale proceeds in another homestead no longer applied, because cash sale proceeds already had been reinvested in the Property, and as noted above, there is no one-year limit set forth in Idaho Code § 55–1008 with respect to "such new homestead acquired with such proceeds."

### VI. CONCLUSION

Where the Cerchiones invested the exempt proceeds from the sale of their prior homestead in a new home under construction prior to their bankruptcy filing, and they established, without any controverting evidence, that they intended to reside in the new home and indeed, subsequently took up residence in the new home on the Property, we conclude that the bankruptcy court did not err in sustaining their homestead exemption claim. We further conclude that the bankruptcy court did not err in declining to amend its decision to find that the Cerchiones' homestead exemption expired when they did not establish residence on the Property or record a Declaration of Homestead with respect to the Property on or before one year following

the closing date of the sale of their Meridian, Idaho residence. Accordingly, we AFFIRM.