JACOB OLINER, Respondent, v. CANADIAN PACIFIC RAILWAY COMPANY et al., Appellants.

First Department, June 9, 1970.

*John B. Creegan* of counsel (*Werner L. Polak* and *Harrison H. Augur* with him on the brief; *Shearman & Sterling*, attorneys), for appellants.

*Jeremiah F. Cross* of counsel (*Cross, Saver & O'Shea*, attorneys), for respondent.

CAPOZZOLI, J. P.   This action was commenced by the service of a summons and complaint upon defendants-appellants, Canadian Pacific Railway Company (hereinafter referred to as Canadian Pacific), a Canadian corporation, licensed to do business within the State of New York, and Bank of Montreal Trust Company, a New York corporation, the stock transfer agent for Canadian Pacific.

The action has been brought for a declaratory judgment adjudging the plaintiff a true and lawful holder and owner of 124 shares of ordinary capital stock of defendant, Canadian Pacific, and, further, that the court direct the defendants to transfer said 124 shares of stock to the plaintiff on the books of defendant, Canadian Pacific, and deliver to plaintiff a new certificate in his name.

The stock certificates involved were originally issued by Canadian Pacific on November 13, 1930 to Dr. Emanuel Hecht and Mrs. Hermine Hecht, citizens of Czechoslovakia. Dr. Hecht died on September 9, 1936 domiciled in Czechoslovakia and Mrs. Hermine Hecht was the sole beneficiary under his will.   In February, 1937 Mrs. Hecht, the sole owner of the stock, indorsed the certificates in blank, transferring title to the Zivnostenska Banka, a Czechoslovakian bank that was nationalized in 1950. Each certificate contains the notation: " transferable only on the books of the company in New York in person or by attorneys upon surrender of this certificate properly endorsed ".   Prior to this nationalization Zivnostenska, for its own account, had deposited the certificates with the First National Bank in New York City.   After it was nationalized an action was commenced in the Supreme Court of this State resulting in the appointment of a permanent receiver who took control of all local assets belonging to Zivnostenska.   Included in those assets were the certificates for the 124 shares of stock and they, too, were delivered by the First National City Bank to the permanent receiver.

In September, 1939, the Canadian Government enacted Regulations Respecting Trading with the Enemy, with a view, among other things, of regulating the treatment of enemy property. These regulations provided that certain defined property of an enemy of Canada vested in the Custodian of the Department of the Secretary of State of Canada (hereinafter referred to as Custodian). Pursuant to these regulations the office of the Custodian advised appellants not to transfer ownership because these certificates had vested in him. Ever since 1939 all dividends payable on these certificates have been paid to the Custodian.

Prior to January, 1968, the permanent receiver of Zivnostenska had attempted to acquire title to the certificates, but failed because of the refusal of the Custodian to transfer such title. In January, 1968, the receiver sold these certificates, and others, to the plaintiff, for the total sum of $150. However, they were sold by the receiver: "without warranty or representation * * * as to value, title or marketability". The plaintiff subsequently presented these certificates to the bank and attempted to have the registered ownership transferred to his own name. This was refused because the transfer of the securities had been blocked as a result of the Custodian's action in 1939. He thereupon commenced this action.

When the action was commenced the defendants found themselves in the position of a stakeholder, with no interest whatever in the litigation and yet placed in a position whereby they might be compelled to face double liability. In order to avoid this result the defendants obtained an order, under CPLR 216, allowing them to notify the Canadian Custodian of the pending action and seeking to bring him into the case so that all necessary parties would be before the court. At the same time the court granted a stay of the prosecution of the action for one year.

However, the Custodian, although notified, did not appear, and, instead, he started legal proceedings in the Exchequer Court of Canada against the plaintiff and defendants herein, seeking a declaration that the shares in question be vested in the Custodian and subject to his control. All the defendants in that action have been served and only the plaintiff has failed to appear therein. In November, 1969 plaintiff obtained an order vacating the stay above mentioned and further restraining defendants from transferring the securities in question, pending the determination of the action. This was conditioned upon the posting of a surety bond by the plaintiff in an amount to be

fixed on the settlement of the order. No order was ever entered and the plaintiff did not furnish the surety bond.

Defendants thereupon moved to dismiss the action, pursuant to CPLR 3211 (subd. [a], par. 10), on the ground that the court could not proceed in the absence of the Custodian and on the ground of *forum non conveniens*. (Since plaintiff and one of the defendants are residents of New York, *forum non conveniens* is inapplicable.) They now appeal from a denial of that motion.

It is plaintiff's position that the courts of this State have jurisdiction over the certificates because they are physically present in New York City, and therefore can render an effective judgment. In considering this argument we note the provisions of section 8–106 of the Uniform Commercial Code, which read as follows: '' The validity of a security and the rights and duties of the issuer with respect to registration of transfer are governed by the law (including the conflict of laws rules) of the jurisdiction of organization of the issuer.'' Canadian Pacific, the issuer of the securities, is a Canadian corporation and we must, therefore, consider the duties and obligations of Canadian Pacific, under the laws of Canada, in order to determine what rights the plaintiff has against the issuer, vis-à-vis the Canadian law which binds the actions of such issuer.

Where the question is one of ownership of the certificates the situs is the domicile of the issuer. This is settled Canadian law. (*Braun* v. *The Custodian*, [1944] Ex. C. R. 30 [Exchequer Ct. of Canada], affd. [1944] S. C. R. 339 [Sup. Ct. of Canada]; *Hunt* v. *The Queen*, [1968] S. C. R. 323 [Sup. Ct. of Canada].)

In the *Braun* case (*supra,* p. 47) of the Exchequer Court's opinion, there is the following: '' It is, I think, a sound rule of law that the situs of shares of a company for the purpose of determining a dispute as to their ownership is in the territory of incorporation of the company, for that is where the court has jurisdiction over the company in accordance with the law of its domicile and power to order a rectification of its register, where such rectification may be necessary, and to enforce such order by a personal decree against it. It is at such place that the shares can be effectively dealt with by the court.''

In affirming the Exchequer Court the Supreme Court of Canada said (p. 346): '' Here the situs of the shares, as distinguished from that of the certificates, was in Canada and the New York Uniform Stock Transfer Law, relied upon by the appellant, has no bearing upon the question. The fact that the Railway Company was authorized to, and did in fact, establish a transfer office in the State of New York where, only transfers

of the shares in question were registrable, cannot make any difference. This was a mere matter of convenience and did not detract from the power of Canada to deal with the title to the shares of the Canadian company."

The conclusion reached by the Canadian courts conforms with the law in the United States and New York State. (*Jellenik* v. *Huron Copper Min. Co.,* 177 U. S. 1; *Miller* v. *Kaliwerke Aschersleben Aktien-Gesellschaft,* 283 F. 746; *Holmes* v. *Camp,* 219 N. Y. 359.)

In the *Jellenik* v. *Huron Copper Min. Co.* case (*supra*), the court held that the situs of the stock of a Michigan corporation was in Michigan and disputes as to ownership must be settled there. At page 13 of the court's opinion we find the following: "The certificates are only evidence of the ownership of the shares, and the interest represented by the shares is held by the Company for the benefit of the true owner. As the habitation or domicil of the company is and must be in the state that created it, the property represented by its certificates of stock may be deemed to be held by the Company within the State whose creature it is, whenever it is sought by suit to determine who is its real owner. This principle is not affected by the fact that the defendant is authorized by the laws of Michigan to have an office in another State, at which a book showing the transfers of stock may be kept."

In *Miller* v. *Kaliwerke Aschersleben Aktien-Gesellschaft* (*supra,* p. 755) of the opinion, the court said: "The situs of the shares involved in these proceedings was in the Southern District of New York, that being the residence of the corporation which issued them. A share of stock and the certificate of the share are two very different matters. The certificate of stock is not the stock itself, but mere evidence of the stockholder's interest in the corporation. A seizure of the certificate, which may be in one state or country, is not a seizure of the stock, the situs of which may be in another."

In *Holmes* v. *Camp* (*supra*) it was held that certificates do not constitute the shareholder's interest in the stock and that the shareholder's interest is properly located where the corporation is organized and may be reached by proper proceedings in that jurisdiction. It cited *Jellenik* v. *Huron Copper Min. Co.* (*supra*) in support of its conclusion. At page 367 of the opinion the court said: "in the absence of some statutory provision the interest of a stockholder in the capital of a corporation may be regarded as property located where the corporation is organized and exists".

It must be recognized that the action of the Canadian Government in providing that the shares vested in the Custodian was an act of State and not subject to the scrutiny of our courts as to whether that action was proper or not.

In *Banco Nacional de Cuba* v. *Sabbatino* (376 U. S. 398, 416) there is the following: " The classic American statement of the act of state doctrine  \*  \*  \*  is found in *Underhill* v. *Hernandez*, 168 U. S. 250, where Chief Justice Fuller said for a unanimous Court (p. 252): ' Every sovereign State is bound to respect the independence of every other sovereign State, and the courts of one country will not sit in judgment on the acts of the government of another done within its own territory ' ".

In *Salimoff & Co.* v. *Standard Oil Co. of N. Y.* (262 N. Y. 220, 224) our Court of Appeals said: " The courts of one independent government will not sit in judgment upon the validity of the acts of another done within its own territory, even when such government seizes and sells the property of an American citizen within its boundaries."

In view of what has been above stated, the conclusion is inescapable that the real dispute is between the plaintiff and the Custodian. The Custodian has not seen fit to become a party to this action and there is no way to subject him to the jurisdiction of our courts because he is entitled to sovereign immunity. (*Federal Motorship Corp.* v. *Johnson & Higgins,* 192 Misc. 401, affd. without opn. 275 App. Div. 660, mot. for lv. to app. dsmd. 299 N. Y. 673, app. dsmd. 299 N. Y. 793.)

Therefore, it is clear that this action should not proceed in the absence of the Custodian, because our courts cannot grant an effective judgment without his presence and it would necessarily result in serious prejudice to the defendants. This is so because, not only would the defendants be subjected to the danger of double financial liability, but also to possible criminal liability under Canadian law.

Accordingly, the order appealed from should be reversed and the motion of the defendants to dismiss the action, pursuant to CPLR 3211 (subd. [a], par. 10) granted, without costs and without disbursements.

McGivern, Markewich, Nunez and Tilzer, JJ., concur.

Order entered February 16, 1970 unanimously reversed, on the law, and the motion of the defendants to dismiss the action, pursuant to CPLR 3211 (subd. [a], par. 10), is granted, without costs and without disbursements.