**In re IROQUOIS ENERGY MANAGEMENT, LLC, Debtor.**

**No. 00–15609 B.**

United States Bankruptcy Court, W.D. New York.

Sept. 30, 2002.

---

Damon & Morey LLP, William F. Savino, Esq., of counsel, Buffalo, NY, for Debtor.

Thompson Hine LLP, Alan R. Lepene, Esq., of counsel, Cleveland, OH, for Charter One Bank, F.S.B.

Hodgson Russ LLP, Garry M. Graber, Esq, of counsel, Buffalo, NY, for Charter One Bank, F.S.B.

CARL L. BUCKI, Bankruptcy Judge.

Charter One Bank, F.S.B. ("Charter One") has perfected in New York its security interest in the accounts and general intangibles of Iroquois Energy Management LLC ("Iroquois"), the debtor herein. At issue in the present dispute is whether that security interest covers a refund due from a Canadian entity. Suggesting that Canadian law may treat the refund as an unencumbered asset, Iroquois asks preliminarily for a determination of the appropriate choice of law.

Shortly after filing a petition for relief under chapter 11 of the Bankruptcy Code,

Iroquois obtained an order authorizing the use of the cash collateral that was subject to the security interest of Charter One. Eventually, Charter One moved under 11 U.S.C. § 362 for relief from the automatic stay, to permit enforcement of its security agreement. In separate responses, the debtor and its Official Committee of Unsecured Creditors disputed the extent of Charter One's lien. Ultimately, however, the parties reached a settlement that allowed Charter One to liquidate the bulk of its collateral. The terms of this settlement were then incorporated into a stipulated order that this Court approved on October 4, 2001 (the "Stipulated Order").

Prior to the filing of the bankruptcy petition, the debtor paid for the purchase of natural gas from a Canadian supplier. Sometime later, the supplier determined that this payment was excessive, and refunded $31,135 to the debtor in early December of 2001. In negotiating the Stipulated Order, Charter One was not aware of the potential for this refund, and the refund did not become an issue until December 13, 2001, when Iroquois informed Charter One of its receipt.

Paragraph 4 of the Stipulated Order recites that "[a]ll other proceeds . . . . hereafter generated from collateral in which Charter One holds a security interest, is to be remitted to Charter One for application against the outstanding indebtedness owed to Charter One by the Debtor . . . ." Insisting that the refund represents the proceeds of its collateral, Charter One demanded a turn-over of the money. When Iroquois refused, Charter One filed the present motion to hold Iroquois in civil contempt of the Stipulated Order. Although it pledges to hold the refund in escrow until a resolution of the present motion, Iroquois disputes the status of the money as collateral. Iroquois contends that the refund was a general intangible

located in Ontario as of the date of bankruptcy filing, and that the status of this asset as collateral depends on the adequacy of perfection under the law of that province. Because Charter One perfected its lien only in New York, Iroquois suggests that the refund may be an unpledged asset that is available for the benefit of unsecured creditors. In reply, Charter One argues that the debtor has at all times been located in New York and that, therefore, New York law must apply.

After hearing the arguments of counsel, this court is satisfied that all parties have asserted positions in good faith and without any intent to evade a binding order. Debtor's counsel did not hide the refund, but promptly reported its receipt to opposing counsel. That the moneys are now in escrow belies any intent to defraud. Accordingly, after oral argument, this court refused to consider a finding of contempt, but announced that it would treat Charter One's motion as a request for clarification of the Stipulated Order and to compel the turnover of proceeds.

The State of New York has adopted the recent revision to Article 9 of the Uniform Commercial Code, with an effective date of July 1, 2001. Section 9–702(c) of this statute provides, however, that "Revised Article 9 does not affect an action, case, or proceeding commenced before Revised Article 9 takes effect." A bankruptcy case is "an action, case, or proceeding" within the meaning of section 9–702(c). In the present instance, Iroquois Energy Management, LLC, filed its petition for relief on October 31, 2000, a date well prior to the effective date of the Revision. Thus, the court must look to the standards adopted by the then extant provisions of New York's Uniform Commercial Code.

Section 9–106 of the pre-revision UCC defines "account" to mean "any right

to payment for goods sold or leased or for services rendered which is not evidenced by an instrument or chattel paper, whether or not it has been earned by performance." The asset presently in dispute is a refund of an over-payment, and not a payment for any goods or services that the debtor may have sold or leased. The refund, therefore, is a general intangible, which section 9–106 defines as "any personal property (including things in action) other than goods, accounts, chattel paper, documents, instruments, and money."

On the day of the bankruptcy filing, the outstanding overpayment was still retained in Ontario by the Canadian supplier. For this reason, the debtor questions whether it is New York or Ontario law which will determine its interest in the refund. For general intangibles, the standard for choice of law is section 9–103(3)(b) of the pre-revision UCC, which states that "[t]he law (including the conflict of laws rules) of the jurisdiction in which the debtor is located governs the perfection and the effect of perfection or non-perfection of the security interest." Thus, the applicable rule for choice of law is that of New York. The central issue then becomes whether it is the substantive law of New York or of Ontario that will determine the effectiveness of lien perfection.

■ In defining rights to intangible property, New York looks to the law of the situs of those assets. The determination of that situs, however, will depend upon considerations of justice and convenience. Writing as chief judge of the New York Court of Appeals, Justice Benjamin Cardozo stated this standard is his opinion in *Severnoe Securities Corp. v. London and Lancashire Insurance Co.*, 255 N.Y. 120, 174 N.E. 299 (1931):

> The situs of intangibles is in truth a legal fiction, but there are times when justice or convenience requires that a legal situs be ascribed to them. The locality selected is for some purposes, the domicile of the creditor; for others, the domicile or place of business of the debtor, the place, that is to say, where the obligation was created or was meant to be discharged; for others, the place where the debtor can be found. At the root of the selection is generally a common sense appraisal of the requirements of justice and convenience in particular conditions.

255 N.Y. at 123–24, 174 N.E. 299 (citations omitted).

A creditor will naturally look to the assets of its debtor as the probable source for payment of an obligation. For this reason, the law applicable to the location of an asset will normally determine rights to its liquidation. By their nature, however, intangibles are ephemeral and without any physical placement. To determine their situs, this court must fully consider the concerns for justice and the convenience of all parties who may have an interest in that asset.

■ In the present instance, Iroquois holds the status of both debtor and creditor. In bankruptcy and in its relationship with Charter One, Iroquois is a debtor. The dispute over choice of law relates to the situs of an intangible asset, and as to that asset, Iroquois is a creditor to the Canadian entity from which was due the refund for overpayment of natural gas. With respect to this latter relationship, however, no dispute exists. The Canadian obligor asserts no continuing claim to the refund, and has already paid to Iroquois its entire amount without retention. Even if the obligation of the Canadian entity were in controversy, such a dispute would not change the respective interests of Iroquois and Charter One to whatever refund might ultimately be found to be due and owing. Charter One holds a security in-

terest not in the tangible assets of a Canadian entity, but in the intangible rights of Iroquois as against those tangible assets.

Intangible interests have value because they represent the prospect of a recovery of assets that are tangible. To its own secured creditors, the owner of an intangible asset provides the one certain link between the secured claim and the payment of cash. From a transaction secured by intangibles, the source of cash is a step removed. Thus, the security interest arises not from contacts in the jurisdiction of any obligor of the secured debtor, but principally from contacts with the debtor's domicile or principle business location. In the present instance, Charter One acquired a security interest in the intangible assets of a New York corporation, and not any direct claim against a Canadian entity. Were this a dispute with a Canadian obligor of assigned rights, the choice of law might have required an assessment of underlying entitlements to a refund. Instead, the dispute has been and remains a conflict between a secured creditor and its New York debtor. While the refunded cash may at one time have been situated in Canada, the situs of Iroquois' interest in that refund is New York. The fundamental purpose of lien recording is to give notice to competing creditors and parties in interest. In considering the intangible interests of the present debtor, New York is the only convenient place of lien perfection. Accordingly, New York's substantive law must govern the effectiveness of Charter One's security interest.

The application of New York law follows the general line of authority regarding the determination of secured rights to intangibles. As stated by American Jurisprudence 2nd, "[t]he statement is sometimes made that intangible personal property, such as evidences of debt and other choses in action, follows the person, and, in conformity with the maxim 'mobilia sequuntur personam,' has its situs at the domicil of the owner." 16 AM. JUR. 2D *Conflict of Laws* § 57 (1998).

Having decided that the substantive law of New York applies, we are left with a simple analysis. The parties have previously stipulated that the claim of Charter One is secured by a lien on all of the accounts receivable, inventory, equipment and general intangibles of Iroquois. As a general intangible, any interest in the gas refund would, therefore, be subject to Charter One's lien. Pursuant to UCC § 9–401, Charter One has duly perfected this lien in the State of New York. Accordingly, the proceeds of this general intangible are subject to the continuing lien of Charter One. Iroquois must therefore pay these funds to Charter One, as required by the terms of the Stipulated Order.

So ordered.