ORDERED PUBLISHED

FILED

DEC 17 2012

SUSAN M SPRAUL, CLERK
U.S. BKCY. APP. PANEL
OF THE NINTH CIRCUIT

# UNITED STATES BANKRUPTCY APPELLATE PANEL

## OF THE NINTH CIRCUIT

| | | |
|---|---|---|
| In re: | ) | BAP No.   NV-11-1305-PaJuH |
| | ) | |
| TIMOTHY L. BLIXSETH, | ) | Bk. No.   11-15010 |
| | ) | |
| Alleged Debtor. | ) | |
| _____ | ) | |
| | ) | |
| STATE OF MONTANA, Department | ) | |
| of Revenue, | ) | |
| | ) | |
| Appellant, | ) | |
| | ) | |
| v. | ) | **O P I N I O N** |
| | ) | |
| TIMOTHY L. BLIXSETH, | ) | |
| | ) | |
| Appellee. | ) | |
| _____ | ) | |

Argued and Submitted on July 20, 2012
at Pasadena, California

Filed - December 17, 2012

Appeal from the United States Bankruptcy Court
for the District of Nevada

Honorable Bruce A. Markell, Bankruptcy Judge, Presiding

_____

Appearances:   Lynn Hamilton Butler, of Brown McCarroll, LLP,
argued for Appellant; Charles D. Axelrod, of Fox
Rothschild LLP, argued for Appellee.

_____

Before: PAPPAS, JURY, and HOLLOWELL, Bankruptcy Judges.

Opinion by Judge Pappas
Dissent by Judge Hollowell

PAPPAS, Bankruptcy Judge:

The Montana Department of Revenue ("MDOR") appeals the order of the bankruptcy court dismissing the involuntary bankruptcy petition it and others filed against the alleged debtor, Timothy Blixseth (Blixseth), for improper venue. We REVERSE.

**FACTS**

On April 5, 2011, MDOR, along with the Idaho State Tax Commission and the California Franchise Tax Board, filed an involuntary chapter 7[1] bankruptcy petition (the "Petition") against Blixseth in the bankruptcy court for the District of Nevada. The Petition listed Blixseth's residence and mailing address as Medina, Washington, and Blixseth's "county of residence or principal place of business" as Las Vegas, Nevada. The box on the Petition titled "Location of Principal Assets of Business Debtor (if different from previously listed address)" was left blank. The "Venue" box on the Petition indicated that venue in the District of Nevada was appropriate because Blixseth had been domiciled, had a residence, principal place of business, or had principal assets, in the District of Nevada for the longer part of 180 days before the petition was filed.

In the Petition, MDOR asserted a claim against Blixseth in the amount of $219,258,[2] the Idaho State Tax Commission asserted

---

[1] Unless otherwise indicated, all chapter, section and rule references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, and to the Federal Rules of Bankruptcy Procedure, Rules 1001-9037.

[2] MDOR asserts this amount is the undisputed portion of its
(continued...)

-2-

a claim against Blixseth for $1,117,914, and the California Franchise Tax Board asserted a claim against Blixseth for $986,957.95, all for unpaid taxes. Just a few days later, on April 20, after settling their claims with Blixseth, the Idaho State Tax Commission and the California Franchise Tax Board withdrew as petitioning creditors in the Petition, leaving MDOR as the sole petitioning creditor.

Meanwhile, on April 8, 2011, the bankruptcy court, acting sua sponte, had entered an "Order to Show Cause Why Venue in This District is Proper And Why Transfer of Case is Not Appropriate" (the "OSC"). In the OSC, the bankruptcy court noted that Blixseth's Washington street and mailing address were listed in the Petition. The court expressed concern that venue in Nevada was not proper "because of the paucity of the connection between Blixseth and the petitioning creditors' selected venue." The OSC required the petitioning creditors to present admissible evidence sufficient to support a finding that venue in Nevada complied with 28 U.S.C. § 1408. That statute provides in pertinent part that:

> [A] case under title 11 may be commenced in the district court for the district –
> (1) in which the domicile, residence, principal place of business in the United States, or principal assets in the United States, of the person or entity that is the subject of such case have been located for the one hundred and eighty days immediately preceding such

[2](...continued)
larger claim held against Blixseth. Blixseth and MDOR are engaged in litigation before the Montana State Tax Appeals Board regarding the balance of MDOR's tax claim, which exceeds $56 million. That litigation was stayed, however, when the bankruptcy case was filed pursuant to MDOR's stay motion.

-3-

commencement . . .;

The petitioning creditors responded to the OSC on April 18, 2011. In their response they asserted that, based on a thorough review of public records, the only indicator they had to determine proper venue for the involuntary bankruptcy case under 28 U.S.C. § 1408 was their discovery that Blixseth recently "had transferred most of his assets out of his personal name and into two Nevada corporate entities." The petitioning creditors asserted that Blixseth's principal assets consisted of his 98% partner's interest in Desert Ranch LLLP, a Nevada limited liability limited partnership ("Desert Ranch"), and his 40% member's interest in Desert Ranch Management LLC, a Nevada limited liability company ("Desert Management"). The creditors contended, because Blixseth's equity interests in the two Nevada entities were his principal assets, venue was proper in Nevada. Additionally, the petitioning creditors outlined several factors that they argued militated against transfer of the case to another district.

In response to the OSC, Blixseth filed a motion to dismiss ("MTD") the Petition.[3] Blixseth asserted that there was no basis for venue for the bankruptcy case in Nevada. Blixseth stated that he had resided in Washington since 2007, after previously residing in California. Moreover, Blixseth asserted that he

[3] Blixseth also challenged MDOR's status as an eligible petitioning creditor and asserted that MDOR filed the involuntary petition in bad faith as a tactic to gain a litigation advantage in the state tax court.

-4-

conducted no business in Nevada, had no place of business in Nevada, and had no property in Nevada.

Importantly, though, in a declaration filed to support the MTD, Blixseth acknowledged that his primary asset was indeed his 98% limited partnership interest in Desert Ranch. Blixseth Supplemental Omnibus Declaration at ¶ 21, May 4, 2011 ("All of my income derives from entities held by Desert Ranch LLLP."). However, he explained that Desert Ranch is a holding company for a number of non-Nevada entities whose principal assets are real estate holdings located in Idaho, Washington, California, Mexico and the Turks & Caicos. He stated that the business records and original partnership agreement for Desert Ranch are maintained in Idaho; its bookkeeping is done in California; and the company conducts no business in Nevada.

Blixseth also admitted that his 40% member's interest in Desert Management comprised the rest of his principal assets. Blixseth explained that Desert Management is the general partner of Desert Ranch, and its only asset is a 2% interest in Desert Ranch. Blixseth noted that he and his son co-manage Desert Management, and that the LLC has no offices or place of business, and does not conduct business, in Nevada. Other than the interests in Desert Ranch and Desert Management, Blixseth stated, he owns only his personal effects.

A hearing on the OSC was conducted by the bankruptcy court on April 22, 2011. MDOR, by then the only petitioning creditor, argued that, based on Nevada's charging order statutes for LLCs and LLLPs, and a decision by a Washington appellate court interpreting a statute similar to the Nevada laws, for venue

-5-

purposes, the location of a debtor's uncertificated interest in a limited liability company or a limited liability partnership is the entity's state of registration. The bankruptcy court continued the hearing so that the parties could submit briefs to more fully: (1) address the location of Blixseth's equity interests in Desert Ranch and Desert Management; (2) analyze the Nevada statutes regarding the right to obtain a charging order against a limited partner's partnership interest; and (3) discuss how Article 9 of the Uniform Commercial Code ("UCC") would treat Blixseth's interests in Desert Ranch and Desert Management.

At the initial hearing, the bankruptcy court also asked MDOR to address why the interests of justice and convenience to the parties required that the case remain in Nevada, rather than transferring the case to a different venue. MDOR conceded that, as to the convenience of the parties, venue in Nevada made little difference since the petitioning creditors were not located in Nevada. However, MDOR argued that "the heart of a creditor's concern is the transfer of the assets . . . into Nevada vehicles that are created for asset protection measures." Hr'g Tr. (Apr. 22, 2011) at 28:21-23. MDOR argued that because Nevada law could apply to unwind the transfer, Nevada had a greater interest in the case than another state. Thus, MDOR argued that transfer to another venue was not in the interests of justice.

On April 27, 2011, Blixseth filed a renewed motion to dismiss and a motion for sanctions.[4] Blixseth and MDOR submitted

[4] The non-venue related issues raised in the MTD were deferred by the bankruptcy court to be considered with the motion
(continued...)

their supplemental briefs on May 4, 2011, and the continued hearing on the OSC was held May 18, 2011.

At the hearing on May 18, the bankruptcy court identified the issue before it as when "all someone has is an equity interest in a Nevada limited-liability, limited-partnership and a membership interest in an LLC, can you say for purposes of [28 U.S.C. §] 1408 that his principal assets are in Nevada?" Hr'g Tr. (May 18, 2011) at 20:23-21:1. In its arguments to the court, MDOR asserted that Blixseth had a statutory connection with Nevada with respect to the governance and operation of Desert Ranch and Desert Management. Furthermore, MDOR reiterated its position that, based on the Nevada charging order statutes that require a creditor to enforce a judgment against a debtor's interest in an LLLP or LLC solely in a Nevada court, the location of the debtor's interest is the state of registration. Blixseth, however, argued that the common law principle that intangible assets are located at the person's domicile applied in this case and was supported by case law and the UCC.

At the close of the second hearing, the bankruptcy court announced its findings of fact and conclusions of law and ruled that venue of the bankruptcy case in Nevada was improper. While Blixseth had not argued so, the bankruptcy court concluded that intangible ownership interests have no physical location. Therefore, the bankruptcy court determined that, in this case, venue based on the location of Blixseth's principal assets was

[4](...continued)
for sanctions. Proceedings concerning both motions have been stayed pending this appeal.

-7-

unavailable. And because it was undisputed that Blixseth did not reside, was not domiciled, and did not have a principal place of business in Nevada, there was no other basis for venue in Nevada.

In the alternative, the bankruptcy court noted that because courts have, for various non-venue purposes, ascribed a location for intangible assets, the bankruptcy court could also in this case determine the location of Blixseth's ownership interests in Desert Ranch and Desert Management. The court decided, applying the common law, that "you look to the residence of the owner of the intangible." Hr'g Tr. (May 18, 2011) at 62:16-17. In the court's opinion, this view was "supplemented and buttressed by" the notion that creditors would look to Article 9 of the UCC to determine where to perfect a security interest in a borrower's intangible asset and that, under the UCC, general intangibles are located at the owner's residence. Hr'g Tr. (May 18, 2011) at 62-63. Thus, to the extent they had any cognizable situs at all, the bankruptcy court held that, for the purpose of determining the proper venue for an involuntary case against him, Blixseth's intangible ownership interests in the Nevada entities were not located in Nevada. Based upon this analysis, the bankruptcy court ruled that venue in the District of Nevada was improper.

An order dismissing the Petition against Blixseth was entered on May 27, 2011, and MDOR timely appealed.

## JURISDICTION

The bankruptcy court had jurisdiction pursuant to 28 U.S.C. § 157(b)(1) and 28 U.S.C. § 1334. We have jurisdiction under 28 U.S.C. § 158.

///

-8-

**ISSUE**

The sole issue in this appeal is whether, for venue purposes under 28 U.S.C. § 1408(1), Blixseth's principal assets, consisting of his intangible equity interests in Desert Ranch and Desert Management, were located in Nevada.

**STANDARDS OF REVIEW**

We review a bankruptcy court's conclusions of law de novo and its factual findings for clear error. Hopkins v. Cerchione (In re Cerchione), 414 B.R. 540, 545 (9th Cir. BAP 2009). Unless there are pertinent factual disputes, a bankruptcy court's interpretation of the venue statutes and its determination of whether a case is filed in an improper venue are reviewed de novo. Kerobo v. Sw. Clean Fuels, Corp., 285 F.3d 531, 533 (6th Cir. 2002); Modaressi v. Vedadi, 441 F. Supp. 2d 51, 53-54 (D.D.C. 2006).

**DISCUSSION**

A.   Venue Law

The statute 28 U.S.C. § 1408(1) provides that venue for a bankruptcy case may be based upon any of four alternatives: the debtor's (1) domicile, (2) residence, (3) principal place of business in the United States, or (4) principal place of assets in the United States. Proper venue is determined by reference to the facts existing within the 180-day period prior to the filing of the bankruptcy petition. 28 U.S.C. § 1408(1). Any one of the four bases is sufficient to support proper venue. Broady v. Harvey (In re Broady), 247 B.R. 470, 472 (8th Cir. BAP 2000); In re Shelton, 2001 WL 35814440, at *3 (Bankr. D. Idaho Oct. 12, 2001). Even so, the "ground of location of assets will not

-9-

frequently provide a real alternative because the residence of an individual is likely to be located in the district in which the individual's principal assets are located." 1 COLLIER ON BANKRUPTCY, ¶ 4.02[c] (Alan N. Resnick & Henry J. Sommer eds., 16th ed., 2012).

Venue statutes "speak[] to an appropriate, geographically identified forum for the effective administration of the bankruptcy process." In re Murrin, 461 B.R. 763, 782 n.36 (Bankr. D. Minn. 2012), rev'd on other grounds, Murrin v. Hanson (In re Murrin), 477 B.R. 99 (D. Minn. 2012); see also VE Holding Corp. v. Johnson Gas Appliance Co., 917 F.2d 1574, 1576 (Fed. Cir. 1990) (venue statutes protect a defendant "from the inconvenience of having to defend an action in a trial court that is either remote from the defendant's residence or from the place where the acts underlying the controversy occurred"); In re Washington, Perito & Dubuc, 154 B.R. 853, 861 (Bankr. S.D.N.Y. 1993) ("The purpose of statutory venue requirements is to ensure that a case is filed in a forum that is convenient for the parties in interest."). Even when a bankruptcy petition is filed in a proper district, the bankruptcy court may still transfer the case to another district "if the court determines that the transfer is in the interest of justice or for the convenience of the parties." Rule 1014(a)(1). If a petition is filed in an improper district, the court "may dismiss the case or transfer it

to any other district" to accommodate the interest of justice or convenience of the parties. Rule 1014(a)(2).[5]

Here, MDOR asserts that the fourth alternative under 28 U.S.C. § 1408(a)(1) provides the basis for venue for this bankruptcy case in Nevada. In explaining the decision to file the Petition in Nevada, the petitioning creditors explained that it was unclear whether Blixseth resided or was domiciled in Washington because the public real property records indicated his residence there was owned by a corporation. See Hr'g Tr. (May 18, 2011) at 17-19. On the other hand, because they discovered that Blixseth had transferred all of his valuable assets into Desert Ranch, which is co-managed by Blixseth and his son through Desert Management, the creditors felt justified in asserting in the Petition that Blixseth's principal assets were located in Nevada.[6] The creditors' decision to file the Petition in Nevada gives rise to the substantive question in this appeal: whether Blixseth's principal assets, consisting of his equity interests

---

[5] The authority to transfer cases is governed by the Rules; there is no bankruptcy-specific venue statute similar to 28 U.S.C. § 1406(a) requiring transfer or dismissal of a case if venue is improper. U.S. Tr. v. Sorrells (In re Sorrells), 218 B.R. 580, 585-86 (10th Cir. BAP 1998).

[6] MDOR does not argue that Blixseth's principal place of business was located in Nevada as a result of his ownership of Desert Ranch and Desert Management. According to Blixseth's declaration, it appears that Desert Ranch and Desert Management conduct no business in Nevada. Blixseth Dec. (May 4, 2011) at 3. See also In re Murrin, 461 B.R. at 787 (ownership interests in entities that hold real estate outside the state are eliminated as "business" for venue purposes).

-11-

in the entities Desert Ranch and Desert Management, are located in Nevada for purpose of venue of the bankruptcy case.

B.    The Location of Blixseth's Principal Assets

It is undisputed that Desert Ranch and Desert Management were established under, and exist pursuant to, Nevada law. N.R.S. 88.350—88.415 [LLLP] and N.R.S. 86.011 et seq. [LLC]. Blixseth also does not contest that his interests in these Nevada entities constitute his "principal assets."  Thus, because the bankruptcy court decided no questions of fact, we review de novo its legal conclusion that Blixseth's ownership interests in Desert Ranch and Desert Management were not located in Nevada for bankruptcy venue purposes.

Of course, Blixseth's uncertificated member's interests in the Nevada LLC and partner's interest in the LLLP are intangible. Intangible property has no physical location; the location or situs of intangible property is a "legal fiction." Delaware v. New York, 507 U.S. 490, 498 (1993) ("intangible property is not physical matter which can be located on a map"); Office Depot Inc. v. Zuccarini, 596 F.3d 696, 702 (9th Cir. 2010) ("attaching a situs to intangible property is necessarily a legal fiction"); In re Murrin, 461 B.R. at 788 (intangible property is "almost completely independent of physical presence"); In re Shelton, 2001 WL 35814440 at *4 (intangible property has no physical characteristics that would serve as a basis for assigning it to a particular locality).  As a result, we are tempted to agree with the bankruptcy court's primary holding in this case that because intangible property has no physical location, the fourth basis to support venue in a bankruptcy case where a debtor's principal

-12-

assets consist of intangible property is simply inapplicable, and therefore, bankruptcy venue must be based on one of the other three alternatives in 28 U.S.C. § 1408(1).

However, though intangible property has no physical location, courts have frequently ascribed a location to intangible assets for various purposes. Thus, the Ninth Circuit has held in a case involving internet domain names that, in determining the location of intangible property for venue purposes, a trial court must adopt a "context-specific" analysis that employs a "common sense appraisal of the requirements of justice and convenience in particular conditions." Office Depot Inc., 596 F.3d at 702 (citation omitted). Indeed, the Ninth Circuit made clear that a single intangible property may be located in multiple places for different purposes. Id.

MDOR and Blixseth both acknowledge that assigning a location to Blixseth's intangible ownership interests in this bankruptcy case requires a common sense, context-specific analysis. But while the cases that the parties cite may address what location should be ascribed to intangible property in different scenarios, none address the situs of intangible property based on the principal place of a debtor's assets in a bankruptcy case. See, e.g., Delaware v. New York, 507 U.S. 490 (dispute among states over right to escheat intangible personal property); Office Depot Inc., 596 F.3d 696 (quasi in rem jurisdiction challenge to complaint for turnover of internet domain names owned by judgment debtor to satisfy a judgment); Koh v. Inno-Pac. Holdings, Ltd., 54 P.3d 1270 (Wash. Ct. App. 2002) (judgment creditor seeking to enforce foreign judgment via a charging order against a debtor's

-13-

interest in an LLC); <u>Oliner v. Canadian Pac. Ry. Co.</u>, 311 N.Y.S.2d 429 (N.Y. App. Div. 1970) (jurisdictional challenge in ownership dispute of stock certificates). We, also, have been unable to locate case law discussing the location of intangible assets for bankruptcy venue purposes in general, nor more particularly, the location of a member's interest in an LLC or a partner's interest in an LLLP.

Because the approach dictated by the Ninth Circuit mandates a context-specific analysis for the particular purpose at issue, in gauging the venue for a bankruptcy case, we believe that the "principal place of assets" should "[l]ogically . . . be construed in a way most resonant with the functional concerns of the administration of the bankruptcy estate [since] all assets in question will be administered by a trustee serving under the jurisdiction of the forum court." <u>In re Murrin</u>, 461 B.R. at 788. In contrast to this approach, the bankruptcy court opted for alternative "bright-line" rules for determining the location of intangible property for bankruptcy venue purposes. It held that intangible assets either have no location at all or are always located at the debtor's residence.

Because the Ninth Circuit instructs that, in this situation, we must examine the context of a particular case, and that we apply "common sense" notions of justice and convenience based upon the particular circumstances, we respectfully disagree with the bankruptcy court's "one-size-fits-all" approach. Moreover, while the bankruptcy court's particular conclusions may be justified under other facts, under the circumstances in this case, we disagree that Blixseth's interests in Desert Ranch and

-14-

Desert Management should either have no situs at all, or should be deemed to be located in Washington, where Blixseth resides.

We first consider the context of this contest. This venue issue arises in a creditor's action to place Blixseth into involuntary bankruptcy so that his available assets may be liquidated for the benefit of his creditors, including MDOR. Viewed in this way, an involuntary bankruptcy case is, at bottom, a creditor collection device. If successful in prosecuting the Petition, Blixseth's creditors, acting through a bankruptcy trustee, will seize and sell Blixseth's interests in Desert Ranch and Desert Management to satisfy their collective claims. Given that goal, it is important to consider what rights a bankruptcy trustee would have to seize and liquidate Blixseth's interests in the Nevada LLLP and LLC.

An LLC is governed by the laws of the state in which it is organized. See generally Weddell v. H2O, Inc., 271 P.3d 743 (Nev. 2012) (discussing Nevada's enactment of the uniform LLC statute found in the N.R.S. at Chapter 86 and the applicability of that statute to Nevada's LLC's). An LLC is formed in Nevada by the execution and filing of articles of organization, along with paying a filing fee, with the Secretary of State. Id. at 749. The owners of an LLC are called members. A member is "the owner of a member's interest in a limited-liability company." Id. A "member's interest" is defined by statute as "a share of the economic interests in a limited-liability company, including profits, losses and distributions of assets." N.R.S. 86.091. "The interest of each member of a limited-liability company is personal property." N.R.S. 86.351. A Nevada LLC is a separate

-15-

entity from its members. N.R.S. 86.371 ("[N]o member or manager of any limited-liability company formed under the laws of this State is individually liable for the debts or liabilities of the company.").

Under Nevada law, a partnership, including an LLLP, is "an association of two or more persons to carry on as co-owners a business for profit[.]" N.R.S. 87.060(1), 88.606(1). A partnership may register as an LLLP at the time of filing its certificate of limited partnership by filing a combined certificate of limited partnership and limited liability limited partnership with the Nevada Secretary of State. N.R.S. 88.606(4). An LLLP comes into existence with the filing of the LLLP certificate of registration. N.R.S. 88.606(5). The owners of an LLLP are referred to as "Partners," and may be either General Partners or Limited Partners. N.R.S. 88.315(6); (7). General Partners participate in the control of the partnership; Limited Partners do not. N.R.S. 88.455. A partner in an LLLP, General or Limited, is a separate entity from the LLLP, "unless the trier of fact determines that adherence to the fiction of a separate entity would sanction fraud or promote a manifest injustice." N.R.S. 88.608(1).

Importantly, the Nevada legislature has made clear that a creditor, looking to seize a debtor's member interest in an LLC, or a partner interest in an LLLP, as a means of satisfying the debtor's debts, can do so in only one way. Under N.R.S. 86.401, upon "application to a court of competent jurisdiction by any judgment creditor of a member, the court may charge the member's interest [in a Nevada LLC] with payment of the unsatisfied amount

-16-

of the judgment with interest." N.R.S. 86-401(1) (LLCs). This remedy is referred to as a "charging order." Weddell, 271 P.3d at 749-50. "No other remedy . . . is available to the judgment creditor attempting to satisfy the judgment . . . ." N.R.S. 86-401(2). The same exclusive remedy is provided for creditor actions targeting a partner's interest in a Nevada LLLP. N.R.S. 88.535(1) (the same wording as N.R.S. 86-401(1), except substituting "partner" for "member"). Like N.R.S. 86-401(2), N.R.S. 88-535(2) is the exclusive remedy by which a judgment creditor of a limited liability limited partner (or an assignee of the partner) may satisfy a judgment out of the partnership interest of the judgment debtor.

As can be seen, Blixseth's creditors' rights to seize his assets as a member in Desert Management and Limited Partner in Desert Ranch are prescribed exclusively by Nevada's statutes. In a bankruptcy case, employing the powers granted by § 544(a)(1),[7] Blixseth's bankruptcy trustee could assert the same rights as his

---

[7] **§ 544. Trustee as lien creditor and as successor to certain creditors and purchasers**

(a) The trustee shall have, as of the commencement of the case, and without regard to any knowledge of the trustee or of any creditor, the rights and powers of, or may avoid any transfer of property of the debtor or any obligation incurred by the debtor that is voidable by--

(1) a creditor that extends credit to the debtor at the time of the commencement of the case, and that obtains, at such time and with respect to such credit, a judicial lien on all property on which a creditor on a simple contract could have obtained such a judicial lien, whether or not such a creditor exists[.]

-17-

creditors to pursue his interests in the LLC and LLLP. Under Nevada's statutes, because a creditor seeking to realize the value of Blixseth's interests would be limited to asking a Nevada court for a charging order, the trustee must also resort solely to the state court to secure a charging order. In our opinion, when this involuntary bankruptcy case is viewed in context, we are persuaded that because Blixseth's interests in the LLC and LLLP were created and exist under, and his creditor's remedies are limited by, Nevada state law, that is sufficient reason to deem Blixseth's interests to be located in Nevada.

The case law, while sparse, is not to the contrary. While there are no similar bankruptcy decisions, one case involving facts closely aligned with this one is Koh, 54 P.3d 1270. There, in determining whether Washington's courts could exercise quasi in rem jurisdiction in a creditor's action for a charging order concerning a nonresident's member's Washington LLC interest, the state court held that the proper situs of that member's interest was Washington, the state in which the LLC was created. Referring to the language in the Washington statutes which, like Nevada, are based on the uniform laws, specifying that a collecting creditor is limited to the remedy of a charging order, the court concluded that "where a partnership organizes under the laws of a state, the partnership interest is located within that state." Id. at 1272.

In addition to pursuing a charging order, a bankruptcy trustee in Blixseth's case may have other methods of liquidating his interests in Desert Ranch and Desert Management. As a practical matter, since these interests would constitute property

-18-

of the bankruptcy estate under § 541(a), by standing in Blixseth's shoes as a member or partner in the entities, the trustee could seek to judicially dissolve the companies and distribute their assets to the members. But just as they do with creditor actions seeking entry of a charging order, the Nevada statutes grant exclusive jurisdiction for such a proceeding to the Nevada district courts.[8] In analogous settings, the courts of several states have held that jurisdiction to dissolve a corporation rests only in the courts of the state of incorporation. Young v. JCR Petroleum, Inc., 423 S.E.2d 889, 892

---

[8] The trustee may seek to dissolve either Desert Ranch, an LLLP, Desert Management, an LLC, or both. The legal mechanisms for judicial dissolution of the two business structures are nearly identical.

N.R.S. 88.550 lists five situations in which an LLLP must be dissolved. The first four are initiated within the partnership. The fifth provides for judicial dissolution: "A limited partnership is dissolved and its affairs must be wound up upon the happening of the first of the following to occur: . . . 5. Entry of a decree of judicial dissolution under NRS 88.555." N.R.S. 88.550(5). N.R.S. 88.555, in turn, provides that "On application by or for a partner the district court may decree dissolution of a limited partnership whenever it is not reasonably practicable to carry on the business in conformity with the partnership agreement."

In nearly identical language, N.R.S. 86.491 provides for judicial dissolution of an LLC. Three situations are initiated within the company. The fourth provides that "A limited-liability company must be dissolved and its affairs wound up: . . . (d) Upon entry of a decree of judicial dissolution pursuant to NRS 86.495." N.R.S. 86.491(d). N.R.S. 86.495(1) then provides the authority to dissolve the company in the Nevada district court: "Upon application by or for a member, the district court may decree dissolution of a limited liability company whenever it is not reasonably practicable to carry on the business of the company in conformity with the articles of organization or operating agreement."

-19-

(W. Va. 1992) ("The courts of one state do not have the power to dissolve a corporation created by the laws of another state."); <u>Valencia Bartels de Nunez v. Valencia Bartels</u>, 684 So. 2d 1008, 1012 (La. Ct. App. 1996); <u>Warde-McCann v. Commex, Ltd.</u>, 522 N.Y.S.2d 19, 19 (N.Y. App. Div. 1987); <u>Spurlock v. Santa Fe P.R.R. Co.</u>, 694 P.2d 299, 313 (Ariz. Ct. App. 1984); <u>see also</u> 19 C.J.S. CORPORATIONS § 932 (1990) ("[T]he courts of one state or country have no jurisdiction or power to dissolve a corporation created by another state or country[.]"). Of special interest here, in a case dealing with an action to dissolve a Nevada LLC, an Ohio court held that there was no basis for concluding that an Ohio court has the authority to dissolve a Nevada LLC. <u>Durina v. Filtroil, Inc.</u>, 2008 WL 4307892, at *2 (Ohio Ct. App. 2010) (citing, <u>inter alia</u>, <u>Kulp v. Fleming</u>, 62 N.E. 334, 339 (Ohio 1901) ("[O]ur courts have no jurisdiction to adjudicate the affairs of a foreign corporation, and any attempt to wind up its business by a comprehensive decree in our courts would be futile.")).

In sum, the Nevada legislature has made it clear that, to sell Blixseth's member interests, a bankruptcy trustee must resort to the Nevada courts either to obtain a charging order against Blixseth's interest in the LLLP or LLC, or to dissolve those entities. Through these restrictions, in our opinion, the statutes implicitly reflect the legislature's assumption that a member's or partner's interests are "located" in Nevada. Consistent with that assumption, in the context of this case, we believe Nevada should be deemed the location of Blixseth's interests in Desert Ranch and Desert Management.

For several reasons, our conclusion that Nevada is the proper venue for this case is also bolstered by notions of justice and convenience of the parties under these facts.

First, it is undisputed that Blixseth availed himself of the benefits of establishing the Nevada LLLP and LLC. It is also uncontradicted that he then transferred all of his valuable assets into those entities. Presumably, in organizing the Nevada entities, and conveying his valuable properties to them, Blixseth desired to take advantage of the separate legal identities bestowed on Desert Ranch and Desert Management under Nevada law in his future dealings with business associates and personal creditors. Given Blixseth's strategy in dealing with his assets, we find it disingenuous that he now argues that, although he chose to take advantage of the Nevada statutory scheme in creating the LLLP and LLC, into which he then transferred all of his valuable assets, now Nevada is not a proper venue for his creditors to pursue their efforts to seize and liquidate those assets. Surely, if notions of justice carry any weight, Blixseth's conduct warrants a conclusion that venue in Nevada is proper.

Moreover, as noted above, if Blixseth is eventually adjudicated an involuntary debtor, it is obviously more convenient for a Nevada trustee to administer his bankruptcy case. Put another way, how can it be anything other than inconvenient, assuming as Blixseth apparently argues that Washington is a proper venue for the bankruptcy case, for a trustee appointed there to have to come to a Nevada court to obtain a charging order or to dissolve Desert Ranch and Desert

-21-

Management. Under these facts, as compared to Washington, Nevada would seem to be the much more convenient venue for the bankruptcy case.[9]

Again, we acknowledge that the bankruptcy court's decision that intangible assets may have no situs or that, if they do possess a "location," it should be the same as the debtor's residence, may be defensible when founded on different facts. However, the Ninth Circuit has instructed that, in determining where a debtor's assets are located for venue purposes, common sense, context, justice and convenience must guide a trial court.

---

[9] We respectfully disagree with our dissenting colleague that the common law, or provisions of the Uniform Commercial Code, compel a different result in determining the venue of an involuntary bankruptcy case prosecuted under these facts. Indeed, as to the common law, one of the cases cited in the dissent (involving a lien perfection dispute, not a venue contest), quoting Justice Cardozo, states that, in determining the appropriate situs for general intangibles, "the root of the selection is generally a common sense appraisal of the requirements of justice and convenience in particular conditions." In re Iroquois Energy Mgmt., LLC, 284 B.R. 28, 31 (Bankr. W.D.N.Y. 2002) quoting Severnoe Sec. Corp. v. London & Lancashire Ins. Co., 174 N.E. 299, 300 (N.Y. 1931). Moreover, the UCC provisions cited in the dissent govern perfection of a security interest in a debtor's assets by a secured creditor, not the collection rights of unsecured creditors like MDOC. In applying the UCC, the bankruptcy court in In re Washington, Perito & Dubuc, 154 B.R. 853 (Bankr. S.D.N.Y. 1993), the other case cited in the dissent, found that the accounts receivable were located at the principal place of business of the debtor, a dissolving law firm, not where some of the account debtors were located. We agree with that bankruptcy court that, given the fact that the law firm had an established place of business, the accounts should be deemed located there. We also agree with the court's observation that the bankruptcy court should avoid "venue being placed in distant locations having only attenuated connections to the [debtor] or its creditors." Id. at 862.

When we consider those factors and this record, we think Blixseth's interests in Desert Ranch and Desert Management should be deemed to be located in Nevada, and that venue for this involuntary bankruptcy case is proper there.

## VI. CONCLUSION

We REVERSE the order of the bankruptcy court dismissing this involuntary bankruptcy case for improper venue.

Dissent begins on next page.

HOLLOWELL, Bankruptcy Judge, Dissenting:

I agree with the majority that resolution of this appeal requires a "context specific" analysis. However, the majority has distorted that analysis by interpreting context-specific as "case-specific."

"Context" is defined as the "interrelated conditions in which something exists or occurs." MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY 250 (Frederick C. Mish, ed., 10th ed. 2000). The majority's conclusion that the location of an intangible asset for bankruptcy venue purposes is the jurisdiction where collection must be pursued focuses on what may happen during (or at the end) of a case instead of on conditions as they exist at the commencement of the case. Thus, the majority's analysis is based on what may happen if an order for relief is actually entered against Blixseth, but that was not the question the bankruptcy court had to address. The issue at the beginning of the case was not how to collect Blixseth's assets but simply where those assets were located. I believe that the bankruptcy court correctly looked to Article 9 of the Uniform Commercial Code (UCC) to decide the location of Blixseth's intangible personal property interest in the LLLP and LLC.

At common law, intangible property follows the person (mobilia sequuntur personam) and is located where a person is domiciled. Delaware v. New York, 507 U.S. 490, 503 (1993). Like the Uniform Limited Liability Company Act (and Revised ULLCA), the UCC has been adopted by Nevada. Article 9 of the UCC follows the common law doctrine by locating, for perfection purposes,

-1-

intangible property at a debtor's residence. <u>See</u> Nev. Rev. Stat. § 88.528 (describing interest in limited partnership as personal property); Nev. Rev. Stat. § 104.9102(pp) (defining general intangibles); Nev. Rev. Stat. § 104.9301 (perfection principles). As the bankruptcy court noted, the UCC governs how Blixseth would have pledged or otherwise encumbered his partnership interests. Because it also governs the perfection of any pledged interest, it provides notice to competing creditors and parties in interest of the existence and priority of any encumbrances. A number of courts have, therefore, determined that using the place of perfection is the best approach for determining the location of a debtor's intangible property for purposes of venue of a bankruptcy case. <u>In re Iroquois Energy Mgmt., Inc.</u>, 284 B.R. 28, 32 (Bankr. W.D.N.Y. 2002); <u>In re Washington, Perito & Dubuc</u>, 154 B.R. 853, 861 (Bankr. S.D.N.Y. 1993).

I fail to see why the majority assumes that Nevada's enactment of the ULLCA or its laws regarding limited partnerships should determine the location of an intangible asset. Nevada has also adopted the UCC which, unlike the uniform LLC statute, has a specific provision that answers the question of where an intangible asset is located.

When venue is based on the location of a debtor's principal assets, using the UCC to make that determination is straight forward and predictable. The majority's approach is neither. Instead it requires courts to reach into a case and engage in speculation about facts that have not yet been established. Therefore, I respectfully dissent.

-2-